**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KAYLA FLOOD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-1906** |
| **MEDTRONIC, INC., ET AL.** | **SECTION "O"** |

## ORDER AND REASONS

Before the Court in this products-liability case removed on the basis of diversity jurisdiction are two motions: Plaintiff Kayla Flood's motion[1] to remand for lack of complete diversity, and Defendant Medtronic, Inc.'s motion[2] to dismiss for failure to state a claim.

A suturing needle broke in half inside Flood during a hysterectomy, and a fragment of it remains there. Flood sued Medtronic—the needle's manufacturer— along with the hospital where the surgery took place and the surgeon who performed it, in Louisiana state court. Medtronic removed and now urges the Court to disregard the Louisiana citizenship of the hospital and the surgeon because Flood sued them before a medical review panel rendered its opinion, as Louisiana law requires. Medtronic is correct. Flood's claims against the hospital and the surgeon sound in medical malpractice, she did not exhaust them before filing suit, and she accordingly had no possibility of recovery against either at the time of removal. Those defendants are improperly joined, the Court disregards their Louisiana citizenship, and complete diversity exists.

---

[1] ECF No. 10.
[2] ECF No. 7.

Reaching the merits, Flood's petition fails to state a claim under the Louisiana Products Liability Act. She alleges that the needle broke, but not what about it was defective, and she pleads neither an alternative design nor that a different warning would have changed her surgeon's decision. Accordingly, for these reasons and those that follow, Flood's motion to remand is **DENIED**, and Medtronic's motion to dismiss is **GRANTED**.

## I.    BACKGROUND

On August 16, 2024, Flood was admitted to St. Tammany Parish Hospital for a total laparoscopic hysterectomy performed by Payton B. Olson, M.D.[3] During surgical closure, a Medtronic-manufactured "Endo Stitch" suturing needle "broke in half."[4] Dr. Olson "was [un]able to locate the broken needle," and "failed to retrieve the piece."[5] Nevertheless, "Dr. Olson decided to close and sew up the wound site," and the fragment remains inside Flood.[6] As a result, Flood "experienced bleeding from the surgical site and burning pain," and "continues to experience chronic, consistent pelvic pain at the same level as prior to the hysterectomy."[7]

Flood alleges that the device used in her surgery was a model that Medtronic knew to malfunction frequently, and that, in September 2022, Medtronic recalled Endo Stitch devices after receiving several reports of needles breaking during

---

[3] ECF 1-1 ¶ 4.

[4] *Id.*

[5] *Id.* The petition states that Dr. Olson "was *able* to locate the broken needle, thus failed to retrieve the piece." *Id.* (emphasis added). Read with the allegations that follow, which describe the piece as lost inside Flood and never recovered, the Court understands the petition to allege that Dr. Olson was *unable* to locate it.

[6] *Id.*

[7] *Id.* ¶ 5.

suturing.[8] She identifies the device by lot number and alleges that the defendants knew or should have known of the risk that the device was susceptible to breaking after normal and customary use.[9]

On August 15, 2025, Flood sued Medtronic, St. Tammany Parish Hospital Service District No. 1 d/b/a St. Tammany Health System, and Dr. Olson in the 22nd Judicial District Court for the Parish of St. Tammany.[10] Against Medtronic, Flood asserts claims under the Louisiana Products Liability Act on three theories: that the Endo Stitch device was unreasonably dangerous in construction and composition, in design, and for want of an adequate warning.[11]

Against the hospital and Dr. Olson (together, the "Health Care Defendants"), Flood pleads in the alternative that they "were negligent and/or at fault in failing to administratively inform Petitioner that an admittedly defective and recalled device would be used and/or the potential hazards and risks associated with the device."[12] That paragraph closes: "Petitioner maintains that the wrongful conduct alleged herein this paragraph is ministerial and clerical and, therefore, not subject to the Medical Malpractice Statute."[13] Flood then clarifies that "[a] separate claim for medical malpractice has been filed with the Patient's Compensation Fund against Defendants, St. Tammany Parish Hospital and Dr. Payton B. Olson, for the negligent

---

[8] *Id.* ¶¶ 6–7.
[9] *Id.* ¶ 7.
[10] *Id.* at 1.
[11] *Id.* ¶ 9.
[12] *Id.* ¶ 11.
[13] *Id.*

performance of the procedure on August 16, 2024."[14]

Flood is a Louisiana citizen.[15] Medtronic is a Minnesota citizen.[16] The Health Care Defendants are both Louisiana citizens.[17] Medtronic was served on August 26, 2025, and removed on September 15, 2025, contending that the Health Care Defendants are improperly joined.[18]

Flood now moves to remand.[19] Medtronic opposes[20] and separately moves to dismiss the claims against it.[21] Because Flood's motion to remand raises the question of the Court's power to act, the Court takes it up first and then turns to Medtronic's motion to dismiss.

## II.   ANALYSIS

### A. Legal Standards.

Medtronic may remove a case from state court to this Court if this Court would have original jurisdiction. *See* 28 U.S.C. § 1441(a). As the removing party, it "bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citations omitted). "The removal statute is strictly construed, with doubts 'resolved in favor of remand.'" *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 888–89 (5th Cir. 2024) (quoting *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008)); *see also Hain Celestial*

---

[14] *Id.* ¶ 12.
[15] *Id.* at 1.
[16] *Id.* ¶ 1; ECF No. 1 ¶ 7.
[17] ECF No. 1-1 ¶ 1; ECF No. 1 ¶¶ 8–9.
[18] ECF No. 1 ¶¶ 8–13, 31; ECF No. 1-1 at 11.
[19] ECF No. 10.
[20] ECF No. 13.
[21] ECF No. 7.

*Grp., Inc. v. Palmquist*, 607 U.S. 421, 424 (2026) ("Federal courts are courts of limited jurisdiction and generally can resolve only the cases that Congress grants them power to hear.").

The asserted basis for original jurisdiction is diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1). The Court has diversity jurisdiction over "all civil actions" that are between "citizens of different States" and "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs[.]" *Id.*[22] Because this case was removed based solely on diversity jurisdiction, the removal is also subject to 28 U.S.C. § 1441(b)(2), "otherwise known as the 'forum-defendant rule.'" *In re Levy*, 52 F.4th 244, 246 (5th Cir. 2022). Under that rule, a case "otherwise removable solely on the basis" of diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Accordingly, to support removal and to avoid remand here, the removing parties must show that "there is complete diversity between all named parties, 'and no defendant is a citizen of the forum State,'" Louisiana. *Pace*, 93 F.4th at 889 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005)).

Medtronic invokes "[t]he improper joinder doctrine[, which] constitutes a narrow exception to the rule of complete diversity." *McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5th Cir. 2005). Complete diversity thus depends on whether the Health Care Defendants are improperly joined. If they are, the Court can "disregard"

---

[22] Flood does not contest that the total value of her claims exceeds $75,000. *See* ECF No. 10-1 at 2 (asserting that remand is appropriate only due to a lack of diversity between the parties).

5

their Louisiana citizenship in the jurisdictional analysis. *See Williams v. Homeland Insurance Co. of New York*, 18 F.4th 806, 812 (5th Cir. 2021) (citing *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (en banc)). If they are not, their in-state citizenship destroys complete diversity and the case must be remanded.

"When analyzing whether the proponent of jurisdiction has established improper joinder," the Court "examine[s] all factual allegations and ambiguities of state law in the light most favorable to the party resisting jurisdiction." *Williams*, 18 F.4th at 811. The party claiming improper joinder bears a "heavy burden" of persuasion. *Campbell v. Stone Insurance, Inc.*, 509 F.3d 665, 669 (5th Cir. 2007). "[T]o determine whether a plaintiff has improperly joined a non-diverse defendant, the district court must examine the plaintiff's possibility of recovery against that defendant *at the time of removal*." *Flagg*, 819 F.3d at 137. "[T]he motive or purpose of the joinder of in-state defendants is not relevant." *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc).

There are "two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Id.* at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)).[23] Only the second way is at issue here.

Under the second way, the Court asks whether Flood "had any possibility of recovery" against the Health Care Defendants in Louisiana state court. *Williams*, 18

---

[23] The Fifth Circuit has "occasionally referred to improper joinder as 'fraudulent joinder.'" *Williams*, 18 F.4th at 812 (quoting *Smallwood*, 385 F.3d at 571 n.1). "Although there is no substantive difference between the two terms, 'improper joinder' is preferred" because it is "more consistent with the statutory language." *Smallwood*, 385 F.3d at 571 n.1.

F.4th at 812 (citing *Flagg*, 819 F.3d at 136). That no-possibility-of-recovery analysis "is virtually identical to the inquiry on a motion to dismiss for failure to state a claim: 'Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder.'" *Id.* (quoting *Flagg*, 819 F.3d at 136). Conversely, if a plaintiff "has not stated a claim for relief against" the nondiverse defendant under Rule 12(b)(6), "then [the defendants were] improperly joined[,] and [the Court] may disregard [their] citizenship." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018) (citation omitted).[24]

Because that inquiry and Medtronic's Rule 12(b)(6) motion apply the same pleading standard, the Court states it once. Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that does not meet Rule 8(a)(2)'s pleading standard should be dismissed for failing to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders

---

[24] Where a plaintiff "has misstated or omitted discrete facts that would determine the propriety of joinder," a court may instead "pierce the pleadings and conduct a summary inquiry," but only to identify "discrete and undisputed facts that would preclude the plaintiff's recovery against the in-state defendant." *Flagg*, 819 F.3d at 136–37 (quotations and alterations omitted). No party contends that a summary inquiry is appropriate here.

'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When considering a Rule 12(b)(6) motion to dismiss, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014). The Court "need not, however, accept the plaintiff's legal conclusions as true." *Id.* at 502–03. Ultimately, "[t]o survive a motion to dismiss," a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although '[courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

## B. The Health Care Defendants Are Improperly Joined.

Medtronic argues that the Health Care Defendants are improperly joined because the Louisiana Medical Malpractice Act ("LMMA") required Flood to present her claims to a medical review panel and to await its opinion before filing suit, the latter of which she failed to do.[25] *See* LA. REV. STAT. ANN. 40:1231.8(B)(1)(a)(i).

---

[25] ECF No. 13 at 6–7. The parties do not dispute that Louisiana substantive law governs the question whether Flood has stated a claim against the Health Care Defendants. *Compare* ECF No. 10-

However, the LMMA "and its procedural requirements and tort liability limitations apply *solely* to medical malpractice claims; all other tort liability on the part of a qualified health care provider is governed by general tort law." *Delcambre v. Blood Sys., Inc.*, 893 So. 2d 23, 27 (La. 2005) (emphasis added). To carry its heavy burden, then, Medtronic must establish two things: first, that Flood's claims against the Health Care Defendants are medical malpractice claims subject to the LMMA; and second, that Flood sued without first exhausting those claims. Medtronic establishes both. Flood therefore had no possibility of recovery against either defendant when Medtronic removed.

> **1. Flood's Claims Against the Health Care Defendants Sound in Medical Malpractice Under Louisiana Law.**

The LMMA broadly defines "malpractice" as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient," and "health care" as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement[.]" LA. REV. STAT. ANN. § 40:1231.1(A)(13), (A)(9).[26] The Act also defines "tort" as "any breach of duty or any

---

1 at 2 ("Plaintiff argues that her claims fall under general negligence for which she filed this lawsuit, however, out of an abundance of caution, she also submitted a complaint with the Medical Review Panel.") *with* ECF No. 13 at 6–9 (Medtronic analyzing Flood's claims under Louisiana law).

[26] The Louisiana Legislature enacted amendments to these definitions effective August 1, 2025, to state expressly that health care and malpractice "includes all acts associated with the medical treatment of an individual, whether directly related to clinical care or performed in an administrative or managerial capacity necessary for the delivery of such care." *See* 2025 La. Sess. Law Serv. Act 342 (S.B. 134). Neither party addresses the amendments or whether they govern conduct occurring in August 2024. The Court therefore does not reach that issue and applies the definitions as they read at the time of the alleged conduct.

negligent act or omission proximately causing injury or damage to another." *Id.* § 40:1231.1(A)(22).

To determine whether particular conduct by a qualified health care provider[27] constitutes malpractice, the Louisiana Supreme Court has supplied six factors:

(1) Whether the wrong is treatment related or caused by a dereliction of professional skill;

(2) Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;

(3) Whether the act or omission involved assessment of the patient's condition;

(4) Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities a hospital is licensed to perform;

(5) Whether the injury would have occurred if the patient had not sought treatment; and

(6) Whether the tort alleged was intentional.

*Coleman v. Deno*, 813 So. 2d 303, 315–16 (La. 2002) (citation modified). The Court applies those factors to the allegations of Flood's petition. *Dupuy v. NMC Operating Co.*, 187 So. 3d 436, 439–42 (La. 2016) (applying *Coleman* factors to allegations that a hospital failed to maintain and service equipment used to sterilize surgical instruments and holding that those allegations sounded in malpractice).

Flood alleges that the Health Care Defendants failed to inform her that "an admittedly defective and recalled device would be used" in her surgery, and that they failed to inform her of "the potential hazards and risks associated with the device."[28]

---

[27] The parties do not dispute that the Health Care Defendants are "qualified health care providers" within the meaning of the LMMA. *See* ECF No. 1 at 7 n.2; ECF No. 1-1 ¶ 1; LA. REV. STAT. ANN. § 40:1231.1(A)(10) (defining "[h]ealth care provider").

[28] ECF No. 1-1 ¶ 11.

10

The *Coleman* factors that bear on this case favor treating that conduct as malpractice. The alleged wrong is treatment related, because the only reason Flood encountered the Endo Stitch device at all was that Dr. Olson selected it to close a surgical incision during a procedure she had consented to undergo. The decision to use a suturing device during closure involved an assessment of her condition on the operating table. The omission occurred within a physician-patient relationship and within the scope of activities a hospital is licensed to perform. And Flood would not have been exposed to the device had she not sought treatment. She alleges no intentional wrongdoing.

Flood resists that conclusion in a single sentence of her petition, which asserts that the conduct alleged in that paragraph "is ministerial and clerical and, therefore, not subject to the Medical Malpractice Statute."[29] She cites no authority for the characterization, but it has some support under Louisiana law. In *Derouen v. Park Place Surgical Ctr., LLC*, a patient underwent a vaginal prolapse repair in which her surgeons implanted a hernia mesh patch. 2009-1442 (La. App. 3 Cir. 5/5/10), 37 So. 3d 525, 526. Thirty-five days after her discharge, the Food and Drug Administration recalled that patch, and the hospital, which received notice of the recall, did not inform the plaintiff. *Id.* at 526–27. Although she "requested that a medical review panel be convened to review malpractice claims" against the hospital and her physicians, the plaintiff filed suit "[w]hile this process was underway[.]" *Id.* at 527.

The Louisiana Third Circuit held that the plaintiff's claim fell outside the Act. *Id.* at 532. The court reasoned that although "the insertion of the patch during Mrs.

---

[29] *Id.*

Derouen's surgery 'was treatment in and of itself, and required professional skill,' the failure to notify of a recall which occurred thirty-five days subsequent to that treatment is not." *Id.* at 531 (quoting *Nash v. Brown*, 2004-751 (La. App. 3 Cir. 3/16/05), 898 So. 2d 619, 623). The court added that "[t]he duty to notify the patient is a ministerial or clerical function and does not require any specialized training or knowledge." *Id.* at 530 (quoting *Garnica v. La. St. Univ. Med. Ctr.*, 99-113 (La. App. 4 Cir. 9/8/99), 744 So. 2d 156, 160).

*Derouen* is nevertheless distinguishable because the recall there was issued *after* the patient was discharged. The court ruled that the failure to notify was not treatment related because it "occurred thirty-five days subsequent to that treatment," that it did not involve an assessment of the patient's condition because "she was no longer admitted at its facility," that it fell outside the hospital's licensed activities because "[a]t the time of the recall, Mrs. Derouen was no longer a patient receiving medical treatment," and that the injury did not depend on her having sought treatment because the tort "was committed later, after the patient was discharged[.]" *Id.* at 531. Moreover, before reaching the *Coleman* factors at all, the court found that the statutory predicates failed: the hospital's omission was not "health care" under LA. REV. STAT. ANN. § 40:1299.41(A)(9) (redesignated as LA. REV. STAT. ANN. § 40:1231.1(A)(9)) because it "did not occur during the patient's medical care, treatment or confinement," so the patient's "status as a patient and her receipt of health care under the MMA is lacking." *Id.* at 530 (internal quotations omitted).

12

Flood pleads the opposite sequence. Medtronic recalled Endo Stitch devices in September 2022, and Flood's surgery took place in August 2024, some twenty-three months later.[30] She alleges that the Health Care Defendants failed to inform her that a recalled device "would be used" and failed to disclose "the potential hazards and risks associated with the device."[31] The omission she alleges therefore occurred while she was a patient and during her medical care and treatment. *Derouen* held that a claim for failing to notify a former patient of a later recall falls outside the Act. It does not hold that a claim for failing to inform a patient before surgery of the risks associated with a recalled device falls outside the Act as well.

Louisiana courts treat claims of the second kind as malpractice. In *Arrington v. St. Tammany Parish Hospital Service District No. 1*, for example, a patient at risk for deep vein thrombosis sued a hospital over its selection, purchase, and implementation of a compression wrap device that allegedly malfunctioned during his admission. 2018-0215 (La. App. 1 Cir. 10/31/18), 267 So. 3d 618, 620–21. The patient argued, as Flood does, that those were administrative decisions falling outside the Act. *Id.* at 622–24. The Louisiana First Circuit disagreed, holding that the hospital's choice of device "necessarily required sufficient efficacy to conform to the physician's orders for Mr. Arrington's use of the device as well as Mr. Arrington's particular needs as a patient at risk for [deep vein thrombosis], which are considerations interconnected with Mr. Arrington's medical treatment." *Id.* at 624. Because a trier of fact could not evaluate that choice without understanding "the

---

[30] *Id.* ¶¶ 4, 6.
[31] *Id.* ¶ 11.

13

interdependency of the physician's medical order for the use of [the] device for an at-risk patient, the at-risk patient's needs, and the particular device selected," the court held that the claim "requires expert medical evidence to determine whether the appropriate standard of care was breached." *Id.* at 625.

That reasoning also answers *Derouen*'s treatment of expert evidence as applied to these facts. The question in *Derouen* was whether a hospital acted with diligence in forwarding a notice it had already received, and no medical judgment bore on the answer. 37 So.3d at 531. The question here is what a surgeon and a hospital should tell a patient about a device before using it during her operation, and that question cannot be separated from the surgical judgment that selected the device for her. *Cf. Arrington*, 267 So. 3d at 625–26; *Moll v. Intuitive Surgical, Inc.*, No. 13-6086, 2014 WL 1389652, at *4–5 (E.D. La. Mar. 31, 2014) (finding a hospital improperly joined because a patient's claims arising from a robotic device used during her hysterectomy sounded in malpractice, since "expert testimony is likely necessary to test the surgeon's decision as to whether and how to use the device").

Accordingly, Flood's claims against the Health Care Defendants sound in medical malpractice. The LMMA's pre-suit panel requirement therefore applies to those claims.

### 2. Flood Failed to Exhaust Her Claims Against the Health Care Defendants.

The Act provides that "[n]o action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established

pursuant to this Section." LA. REV. STAT. ANN. § 40:1231.8(B)(1)(a)(i). And "[t]he Supreme Court of Louisiana has interpreted this provision to not only require the plaintiff to *present* the claim to a medical review panel, but also to wait until 'the panel has *rendered its expert opinion* on the merits of the complaint' before filing suit." *Flagg*, 819 F.3d at 137–38 (quoting *Delcambre v. Blood Sys., Inc.*, 893 So.2d 23, 27 (La. 2005)). "With exceptions inapplicable to the facts of this case, 'the plaintiff's suit must be dismissed' without prejudice if the plaintiff fails to satisfy this exhaustion requirement before filing suit." *Id.* at 138 (quoting *Gele v. Binder*, 05-121 (La. App. 5 Cir. 5/31/05), 904 So. 2d 836, 837).

Flood's petition alleges that a "separate claim for medical malpractice has been filed with the Patient's Compensation Fund" against the Health Care Defendants.[32] Her motion states that "out of an abundance of caution, she also submitted a complaint with the Medical Review Panel."[33] Nothing in the record suggests that a panel rendered an opinion before Flood filed suit, and she has never contended otherwise. Because jurisdictional facts are fixed at the "time of removal," *see Flagg*, 819 F.3d at 137, and because Flood has not shown that a panel issued a decision before filing suit, the only conclusion is that she has not exhausted her claims. *See Hobbs v. Pediatric Kid-Med, LLC*, No. 25-224, 2025 WL 2589596, at *4–5 (E.D. La. Sept. 8, 2025) (finding medical defendants improperly joined where the plaintiff initiated a malpractice action but made no showing that the panel issued a final

---

[32] ECF No. 1-1 ¶ 12.
[33] ECF No. 10-1 at 2.

decision before removal). That the panel process may since have concluded would not matter. *See Flagg*, 819 F.3d at 140.[34]

*     *     *

Because Flood cannot establish a cause of action against the Health Care Defendants in state court, they are improperly joined, and the Court disregards their Louisiana citizenship. Flood is a Louisiana citizen and Medtronic, the only properly joined defendant, is a Minnesota citizen. The amount in controversy exceeds $75,000 and Flood does not contend otherwise. Section 1441(b)(2)'s forum-defendant rule poses no impediment to removal. The Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) and denies the motion to remand.

When a court determines that a nondiverse party has been improperly joined, "that party must be dismissed without prejudice," because a court whose jurisdiction rests on diversity "never has jurisdiction over a nondiverse party." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016). The claims against the Health Care Defendants are therefore dismissed without prejudice for lack of subject-matter jurisdiction.

---

[34] Flood's principal argument is that removal was premature because the Health Care Defendants have not filed exceptions of prematurity and obtained rulings dismissing the claims against them. ECF No. 10-1 at 2. That argument misapprehends the improper joinder inquiry. A federal court has an independent "obligation to determine whether a plaintiff has improperly joined a party that defeats federal diversity jurisdiction," and it does not await a state-court ruling before discharging it. *Flagg*, 819 F.3d at 136.

### C. Flood Fails to State a Construction-or-Composition, Design, or Warning Claim Against Medtronic Under Louisiana Law.

With jurisdiction settled, the Court turns to Medtronic's motion to dismiss. The Louisiana Products Liability Act ("LPLA") "establishes the exclusive theories of liability for manufacturers for damage caused by their products." LA. REV. STAT. ANN. § 9:2800.52; *see also Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012). To avoid dismissal, Flood must state a facially plausible claim that the defendant is the "manufacturer of a product," that her damage was "proximately caused by a characteristic of the product that renders the product unreasonably dangerous," and that her damage "arose from a reasonably anticipated use of the product." *Id.* § 9:2800.54(A). A product may be unreasonably dangerous in "construction or composition," in "design," because of an inadequate warning, or because it does not "conform to an express warranty of the manufacturer." *Id.* § 9:2800.54(B)(1)–(4). Flood pleads the first three.[35] Medtronic challenges each,[36] and the Court takes them in the order Medtronic raises them.

### 1. Flood's Construction-or-Composition Claim Fails Because She Does Not Allege How the Endo Stitch Suturing Device Was Defective.

"A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." *Id.*

---

[35] ECF No. 1-1 ¶ 9.
[36] ECF No. 7-1 at 3–8.

§ 9:2800.55. Flood alleges that the "Endo Stitch suturing device was manufactured by Medtronic," an "Endo Stitch suturing needle broke in half during the surgical closure," the fragment was "lost inside" her and remains there, she was injured and experiences continuing pain as a result, the device came from an identified lot, and that Medtronic "issued a recall on the Endo Stitch devices" in September 2022 "after it received several reports of needles breaking during suturing."[37] However, she fails to describe *how* the device deviated from Medtronic's specifications or standards, alleging only that it "possessed or contained one or more characteristics, vices and/or defects which rendered such product unreasonably dangerous."[38]

That omission is fatal. In *Lirette v. DePuy Mitek, L.L.C.*, the plaintiffs alleged that a tibial sheath "deviated from the manufacturer's specifications because it split and fragmented in the plaintiff's knee." No. 13-2892, 2014 WL 5445777, at *5 (W.D. La. Oct. 16, 2014). The court dismissed the claim, reasoning that the plaintiffs failed to allege "how this split and fragmentation was caused by a deviation from the manufacturer's specifications or standards." *Id.* In other words, "[i]t is not sufficient to allege that because a product broke, it must have deviated from performance standards" because "[p]roducts can break for any number of reasons, including user negligence[.]" *Id.* Flood's petition rests on the same inference.

Where courts have found allegations sufficient to state a construction-or-composition claim, they supply what Flood does not. In *Flagg v. Stryker Corp.*, a patient whose toe implants fractured within months alleged that "the shape and

---

[37] ECF No. 1-1 ¶¶ 4–8.
[38] *Id.* ¶ 8.

sizing of the implants led to the implants' fracturing and caused them to be difficult to remove once broken." 647 F. App'x 314, 318 (5th Cir. 2016) (*Flagg II*).[39] The Fifth Circuit reversed the dismissal of his construction claim because that allegation showed "*precisely how the product failed* and how that failure caused his injury," and "would support an ultimate verdict that the sizing and shape of the implants deviated from the normal specifications and performance standards, or from other identical implants." *Id.* (emphasis added). And in *Rhodes v. Covidien LP*, a patient alleged that surgical mesh migrated off his hernia because the polyester in it was "weak" and "known to unravel," which caused the "polyester fiber to detach and travel to other parts of the body." No. 18-10667, 2019 WL 2162845, at *3 (E.D. La. May 17, 2019). The court sustained the claim because he had alleged both "*how the mesh is defective* (*i.e.*, the polyester is weak, which causes the mesh to detach and travel to other parts of the body)," and "that this alleged defect caused his injury." *Id.* (emphasis added). Each plaintiff identified the defective characteristic and tied it to the failure. Flood identifies neither.[40]

Nor does the recall allegation fill the gap. That Medtronic recalled Endo Stitch devices after reports of needles breaking during suturing supports an inference that Medtronic regarded such breakage as a problem. It does not identify what about the

---

[39] The en banc court in *Flagg* resolved the improper joinder question and returned the case to the panel, 819 F.3d at 140, which then addressed the sufficiency of the LPLA allegations. *See Flagg II*, 647 F. App'x at 315 & n.2.

[40] Flood states for the first time in her opposition that "[a]llowing a component of the device to detach and remain in the patient suggests a defect in composition or construction with either inadequate fixation of the needle, or a brittle and weak component that detached with use." ECF No. 11 at 11. However, the Court "may only consider the allegations in the complaint and any attachments." *Travis*, 326 F.3d at 648 (citing *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002)).

needle used on Flood departed from Medtronic's specifications, from its performance standards, or from otherwise identical needles.

### 2. Flood's Design Claim Fails Because She Identifies No Alternative Design.

"A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control[,] [t]here existed an alternative design for the product that was capable of preventing the claimant's damage," and the "likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product." LA. REV. STAT. ANN. § 9:2800.56. Flood's design allegation reads in its entirety: "The product was unreasonably dangerous in its design."[41] That is a legal conclusion, and the Court does not accept it as true. *Iqbal*, 556 U.S. at 678. Neither the petition nor Flood's opposition identifies any alternative design or even asserts that one existed.

Flood's allegations are insufficient to state a design claim. In *Celino v. Biotronik, Inc.*, the court dismissed a design defect claim against a defibrillator manufacturer where the complaint "merely recite[d] some of the elements of a LPLA design defect claim—and fail[ed] to point to an alternative design." 536 F. Supp. 3d 89, 107 (E.D. La. 2021). *Celino* also explained that *Flagg II* "does not require courts to accept wholly conclusory allegations." *Id.* at 106 (citing *Dubroc v. Bristol-Myers Squibb*, No. 18-833, 2019 WL 3756469, at *4 (M.D. La. Aug. 8, 2019)). Indeed, the design claim in *Flagg II* survived there because the plaintiff alleged that a different

---

[41] ECF No. 1-1 ¶ 9.

metal alloy would have performed better, which the panel read as "suggest[ing] an alternative design existed which would have reduced the risks of the original product." 647 F. App'x at 318. Flood pleads no counterpart.

### 3. Flood's Failure-to-Warn Claim Fails Because She Does Not Allege That a Different Warning Would Have Changed Her Surgeon's Decision.

"To successfully maintain a failure-to-warn claim under the LPLA, a plaintiff must demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic." *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 264 (5th Cir. 2002). Louisiana applies the learned intermediary doctrine to medical devices. *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098–99 (5th Cir. 1991) (citations omitted).

To state a failure-to-warn claim under that doctrine, a plaintiff must allege "(1) that the defendant failed to warn the physician of a risk associated with the use of the product, not otherwise known to the physician, and (2) that the failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury." *Id.* at 1098. "Because the defective aspect of the product must cause the injury, the plaintiff must show that a proper warning would have changed the decision of the treating physician, *i.e.*, that but for the inadequate warning, the treating physician would not have used or prescribed the product." *Id.* at 1098–99.

Flood satisfies the first element. She alleges that a warning about the defect "had not been provided to either the physicians at St. Tammany or to the

Petitioner."[42] She does not satisfy the second. Nothing in the petition alleges that a different warning would have changed Dr. Olson's decision to use the Endo Stitch device, or that he would have chosen a different instrument had Medtronic warned him. Courts in this district dismiss warning claims on this basis alone. *See, e.g.*, *Rhodes*, 2019 WL 2162845, at *4; *Lewis v. Baxter International Inc.*, No. 16-16391, 2017 WL 661324, at *4 (E.D. La. Feb. 17, 2017); *Hargrove v. Bos. Sci. Corp.*, No. 13-3539, 2014 WL 4794763, at *11 (E.D. La. Sept. 24, 2014); *see also Flagg II*, 647 F. App'x at 316 n.3 (affirming the dismissal of warning claim, noting the absence of any allegation regarding "whether Flagg's doctor would have used the implants if given such a warning").[43]

\*     \*     \*

In sum, Flood does not state a claim under any of the three theories she pleads. She alleges that the Endo Stitch device broke, but not what about it was defective. She identifies no alternative design. And she does not allege that a different warning would have changed Dr. Olson's decision to use the device.

### D. Flood May Amend Her Petition to Cure the Deficiencies Identified.

Flood requests leave to amend her complaint.[44] The Court will "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). In determining

---

[42] ECF No. 1-1 ¶ 9.

[43] Flood's opposition asserts that Medtronic's failure to warn her surgeon was the cause in fact and proximate cause of her injuries. ECF No. 11 at 12. A brief cannot supply what a pleading omits. The Court also acknowledges *Morenc v. Roche Diagnostics Corp.*, No. 19-10605, 2019 WL 6829336 (E.D. La. Dec. 13, 2019), where the court sustained a warning claim on allegations that a manufacturer failed to warn the plaintiff's physician of a risk and that the failure caused his stroke, without requiring an express allegation about what the physician would have done differently. *Id.* at *3–4. To the extent *Morenc* is read to dispense with that allegation, the Court follows *Willett* and *Flagg*.

[44] ECF No. 11 at 13.

22

whether to grant leave to amend, the Court considers factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182 (1962). Flood has not previously amended her Complaint and it is not clear that amendment would be futile. Nor do any of the other factors appear to apply. The Court therefore grants Flood leave amend her Complaint, if she chooses, to remedy the deficiencies outlined here.

## III.   CONCLUSION

Accordingly,

**IT IS ORDERED** that the motion[45] to remand is **DENIED**. Because Defendants St. Tammany Parish Hospital Service District No. 1 d/b/a St. Tammany Health System and Payton B. Olson, M.D., are improperly joined, the claims against them are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

**IT IS FURTHER ORDERED** that Defendant Medtronic, Inc.'s motion[46] to dismiss is **GRANTED**, and Plaintiff's claims against Medtronic are **DISMISSED WITHOUT PREJUDICE**. Plaintiff has 30 days from the entry of this Order to amend her pleading to remedy the deficiencies identified in this Order. Failure to timely amend will result in dismissal of those claims with prejudice.

---

[45] ECF No. 10.
[46] ECF No. 7.

23

24

New Orleans, Louisiana, this 30th day of July, 2026.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE